IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| JASON BRADLEY KENNEDY, <br><br> Plaintiff, <br> v. <br><br> TEXAS TRUST CREDIT UNION and ASSURANT, INC., <br><br> Defendants, | **Civil Action Number:** <br><br><br> **COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

NOW COMES, Plaintiff JASON BRADLEY KENNEDY ("Plaintiff"), by and through his attorneys, JAFFER LAW, PLLC, and files this *Complaint* against Defendant TEXAS TRUST CREDIT UNION ("TTCU") and Defendant ASSURANT, INC. ("Assurant"), collectively referred to as "Defendants", and respectfully sets forth, complains, and alleges, upon information and belief, the following:

**PREMLIMINARY STATEMENT**

1. This is an action for actual, statutory, and punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. § 1681 *et seq.* the Fair Credit Reporting Act ("FCRA") and for Breach of Contract under Texas Law.

**JURISDICTION & VENUE**

2. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, 1334 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(b)(2), and 28 U.S.C. § 1391(b)(3) being the Plaintiff primarily resides in this district.

4. Joinder in this district is proper as to all Defendants Under Rule 20(a) of the Federal Rules of Civil Procedure as (1) the claims against the Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences, and (2) there is a question of law or fact common to all Defendants.

## PARTIES AND SERVICE

**Plaintiff Jason Bradley Kennedy**

5. Plaintiff is a resident of Tom Green County, Texas, which is located in this district.

6. At all times material hereto, Plaintiff was a "Consumer," as defined under 15 U.S.C. § 1681a(c).

**Defendant Texas Trust Credit Union.**

7. Defendant Texas Trust Credit Union is a "Person" as defined by 15 U.S.C. § 1681a(b) and conducts substantial and regular business activities . Texas Trust Credit Union may be served with process upon CORPORATE SERVICE COMPANY, its registered agent for service of process, at 100 Shockoe Slip Fl 2, Richmond, VA, 23219-4100.

8. At all times material hereto, Defendant Texas Trust Credit Union is a person who routinely furnishes information concerning Consumers and their debts to Consumer Reporting Agencies for the purpose of publishing consumer reports, as said term is defined under 15 U.S.C. § 1681a(d).

**Defendant Assurant, Inc.**

7. Defendant Assurant is a "Person" as defined by 15 U.S.C. § 1681a(b) and conducts substantial and regulate business activities in this judicial district. Assurant, Inc may be served with process upon CORPORATE SERVICE COMPANY, its registered agent for service of process, at 251 Little Falls Drive, Wilmington, Delaware 19808.

8. At all times material hereto, Defendant Assurant is a corporation engaged in the business of providing insurance products and GAP coverage, including in Texas.

## FACTUAL ALLEGATIONS

**Background**

10. On or around April 15, 2022, Plaintiff opened an auto loan with Defendant Texas Trust.

11. Upon the opening of the auto loan, Plaintiff purchased an auto insurance policy with Geico and a GAP insurance policy with Defendant Assurant.

12. In or around May 2024, Plaintiff's vehicle was involved in a hailstorm.

13. Around the same time, Plaintiff's auto insurance, Geico, deemed the vehicle to be "totaled." The remaining balance on the loan was $29,923.00.

14. On June 2, 2024, Geico sent Plaintiff a Total Loss Settlement Explanation, stating the net settlement amount paid would be $24,163.56.

15. On June 3, 2024, Geico paid Defendant Texas Trust $24,163.56.

16. Defendant Texas Trust assured the Plaintiff that the remaining balance would be covered by the GAP insurance offered by Defendant Assurant.

17. In or around June 2024, Defendant Texas Trust, as lienholder, filed a GAP insurance claim on behalf of Plaintiff to Defendant Assurant.

18. Around the same time, Defendant Assurant emailed Plaintiff requesting a copy of a police report, a document that is irrelevant to his insurance claim.

19. In or around July 2024, Plaintiff responded to Defendant Assurant's email stating that he does not have a police report as the damage to the vehicle was caused by hail.

20.  On September 5, 2024, Defendant Assurant sent an email to Plaintiff stating that it was their mistake that a GAP insurance payment was not made to Defendant Texas Trust due to a system error.

21.  On September 11, 2024, Defendant Assurant mailed out a check for the remaining balance on the auto loan to Defendant Texas Trust

22.  By September 2024, the Account was fully satisfied and paid in full through auto insurance and GAP insurance.

23.  Despite this, Texas Trust reported Plaintiff's account as 30 days late in July 2024 and 60 days late in August and September 2024 to the Consumer Reporting Agencies (the "CRAs").

24.  The reported delinquencies were not caused by any fault or omission of the Plaintiff, but rather by third-party delays and administrative errors by Texas Trust and Assurant

**Defendant Texas Trust's violation of 1681s-2(b)**

26.  In July 2023, the Plaintiff obtained a copy of his Experian, Equifax, and Transunion consumer reports and discovered that Defendant Texas Trust had falsely or erroneously furnished the Account with a 30-day delinquency in July 2024 and 60-day delinquencies in August and September 2024.

27.  The false and erroneous reporting by Defendant Texas Trust severely affected Plaintiff's creditworthiness and reputation.

**First Dispute**

28.  In or around November 2024, Plaintiff filed a dispute with the CRAs detailing the inaccurate and erroneous information being furnished by Defendant Texas Trust.

29.  Experian, Equifax, and Transunion forwarded the dispute and an Automated Consumer Dispute Verification form ("ACDV") to Defendant Texas Trust.

30. Despite Texas Trust receiving the dispute, ACDVs, and accompanying documents, Defendant Texas Trust conducted a superficial investigation and reported back to Experian, Equifax, and Transunion that the information was "accurate" and should remain unchanged on Plaintiff's consumer reports.

**Second Dispute**

31. On January 21, 2025, Plaintiff sent a second dispute letter to Experian, Equifax, and Transunion along with accompanying documents such as proof of the inaccurate and erroneous information being reported on Plaintiff's consumer reports and his personal identifying documents.

32. Experian, Equifax, and Transunion forwarded the second dispute and an Automated Consumer Dispute Verification form ("ACDV") to Defendant Texas Trust.

33. Despite Texas Trust receiving the dispute, ACDVs, and accompanying documents for a second time, Defendant Texas Trust conducted a superficial investigation and reported back to Experian, Equifax, and Transunion that the information was "accurate" and should remain unchanged on Plaintiff's consumer reports.

34. Defendant Texas Trust did not evaluate or review the documents that included Plaintiff's disputes and ACDVs from Experian, Equifax, and Transunion.

35. Defendant Texas Trust negligently or willfully failed to conduct a reasonable investigation of Plaintiff's disputes when it conducted a superficial investigation and did not review or evaluate the documents attached to the Plaintiff's disputes sent to Experian, Equifax, and Transunion.

36. Defendant Texas Trust did not correct or delete the inaccurate and erroneous information relating to the Account but continued to report false and erroneous information to the Consumer Reporting Agencies.

37.     As a result of the inaccurate information relating to the Account remaining on Plaintiff's consumer reports, Plaintiff was denied credit opportunities and will continue to be harmed and injured by Defendant Texas Trust's erroneous and inaccurate reporting for up to 7 years.

38.     Due to Defendant Texas Trust's negligent or willful failure to conduct a reasonable investigation, the Plaintiff suffers from injury to her creditworthiness and reputation, credit denials, lower credit limits, mental anguish and emotional distress, anxiety, lack of sleep, and added stress to his daily routine.

39.     For these reasons, Defendant Texas Trust willfully or negligently failed to comply with its obligations under 15 U.S.C. § 1681s-2(b).

**Defendant Assurant's Breach of Contract**

40.     At all relevant times, Plaintiff was a borrower under a retail installment contract that included GAP insurance administered by Defendant Assurant.

41.     The GAP agreement was a valid and enforceable contract between Plaintiff and Defendant Assurant,.

42.     Plaintiff performed all his duties under the terms of this contract.

43.     Defendant Assurant's delay in honoring the claim, despite having all necessary documentation and acknowledging its internal error, constitutes a breach of the GAP agreement.

44.     As a result of Assurant's breach, Plaintiff suffered consequential damages including negative credit reporting, injury to his creditworthiness and reputation, credit denials, lower credit limits, mental anguish and emotional distress, anxiety, lack of sleep, and added stress to his daily routine.

## FIRST CAUSE OF ACTION
### Negligent Violation of the Fair Credit Reporting Act as to Defendant Texas Trust
### 15 U.S.C. § 1681s-2(b)

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

46. This is an action for negligent violation of the FCRA 15 U.S.C. § *et seq*.

47. Pursuant to the FCRA, all persons who furnished information to consumer reporting agencies must participate in reinvestigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer report.

48. Pursuant to the FCRA, a furnisher of disputed information is notified by the consumer reporting agency when the agency receives notice of a dispute from a consumer, such as Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

49. The results of the investigation by the person must be reported to consumer reporting agencies, and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to other agencies which were supplied with such information.

50. Defendant Texas Trust negligently violated 15 U.S.C. § 1681s-2(b) by the publishing of inaccurate credit information to a credit reporting agency; by failing to fully and properly investigate Plaintiff's disputes reported to Experian, Equifax, and Transunion; and by failing to correctly report results of an accurate investigation to the credit reporting agencies.

51. Specifically, Defendant Texas Trust furnished that the Account had a 30-day delinquency in July 2024 and 60-day delinquencies in August and September 2024.

Defendant Texas Trust does not maintain reasonable procedures to assure maximum possible accuracy of the consumer information it contains for furnishing that information to Consumer Reporting Agencies.

52.     As a result of the conduct, action, and inaction of Defendant Texas Trust, Plaintiff suffered damages via loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

53.     The conduct, action, and inaction of Defendant Texas Trust were negligent, rendering Texas Trust liable for actual, statutory, and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681(o).

54.     Plaintiff is entitled to recover costs and reasonable attorneys' fees from Defendant Texas Trust in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(o).

## SECOND CAUSE OF ACTION
### Willful Violation of the Fair Credit Reporting Act as to Defendant Texas Trust
### 15 U.S.C. § 1681s-2(b)

55.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

56.     This is an action for willful violation of the FCRA 15 U.S.C. § *et seq*.

57.     Pursuant to the FCRA, all persons who furnished information to consumer reporting agencies must participate in reinvestigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer report.

58.     Pursuant to the FCRA, a furnisher of disputed information is notified by the consumer reporting agency when the agency receives notice of a dispute from a consumer, such as Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

59.     The results of the investigation by the person must be reported to consumer reporting agencies, and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to other agencies that were supplied with such information.

60. Defendant Texas Trust willfully violated 15 U.S.C. § 1681s-2(b) by the publishing of inaccurate credit information to a credit reporting agency; by failing to fully and properly investigate Plaintiff's disputes reported to Experian, Equifax, and Transunion; and by failing to correctly report results of an accurate investigation to the credit reporting agencies.

61. Specifically, Defendant Texas Trust furnished that the Account had a 30-day delinquency in July 2024 and 60-day delinquencies in August and September 2024.

62. Defendant Texas Trust does not maintain reasonable procedures to assure maximum possible accuracy of the consumer information it contains for furnishing that information to Consumer Reporting Agencies.

63. As a result of the conduct, action, and inaction of Defendant Texas Trust, Plaintiff suffered damages via loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

64. The conduct, action, and inaction of Defendant Texas Trust were willful, rendering Texas Trust liable for actual, statutory, and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681(n).

65. Plaintiff is entitled to recover costs and reasonable attorneys' fees from Defendant Texas Trust in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681(n).

### THIRD CAUSE OF ACTION
**Breach of Contract**
**Under applicable Texas Law as to Defendant Assurant**

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

67. This is an action for Breach of Contract.

68. At all times relevant, Plaintiff was a borrower under a retail installment contract that included a Guaranteed Asset Protection (GAP) insurance agreement administered by Defendant Assurant.

69. The GAP agreement was a valid and enforceable contract between Plaintiff and Defendant Assurant.

70. Under Texas law, a claim for Breach of Contract requires the Plaintiff to show:

    a. The existence of a valid contract;

    b. Plaintiff's performance or entitlement to performance;

    c. Breach by Defendant; and

    d. Damages as a result.

See *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 882 (Tex. App.--Dallas 2007, no pet.).

71. The GAP insurance agreement was made expressly for the benefit of Plaintiff, entitling Plaintiff to enforce the contract. See *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999).

72. Defendant Assurant's delay in honoring the claim, despite having all necessary documentation and acknowledging its internal error, constitutes a breach of the GAP agreement.

73. As a result of the conduct, action, and inaction of Defendant Assurant, Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, loss of earnest money, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

74. The conduct, action, and inaction of Defendant Assurant was negligent, rendering Assurant liable for actual damages in an amount to be determined by a Judge and/or Jury pursuant to applicable Texas law.

75. Plaintiff is entitled to recover reasonable costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to Texas Law.

76. **WHEREFORE**, Plaintiff, an individual, demands judgment in his favor against Defendant Assurant, or damages together with attorney's fees and court costs pursuant to Texas Law.

## DEMAND FOR TRIAL BY JURY

77. Plaintiff requests a trial by jury on all issues and counts so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment against each Defendant as follows:

1. Awarding Plaintiff actual damages provided and pursuant to 15 U.S.C. § 1681o(a) and Texas law from each Defendant;

2. Awarding Plaintiff statutory damages provided and pursuant to 15 U.S.C. § 1681n(a) from each Defendant;

3. Awarding Plaintiff punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2) from each Defendant;

4. Awarding Plaintiff attorneys' fees provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C.§ 1681o(a)(2), and Texas law; and

5. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: June 10, 2025                                    Respectfully Submitted,

**JAFFER & ASSOCIATES PLLC**

/s/ *Stephen Jones*
**Stephen Jones**
Bar No.: 24094760
5301 Alpha Rd., Suite 80-5
Dallas, TX 75240
T: (214) 945-0000
F: (888) 530-3910
E-mail: stephen@jaffer.law
*Attorneys for Plaintiff*